MARITIME PETROLEUM CORPORATION, A CORPORATION OF THE STATE OF NEW YORK, PROSECUTOR, v. CITY OF JERSEY CITY AND STATE OF NEW JERSEY DIVISION OF TAX APPEALS, DEPARTMENT OF TAXATION AND FINANCE, DEFENDANTS.

Submitted May 4, 1948—Decided July 19, 1948.

Before Justices DONGES, COLIE and EASTWOOD.

For the prosecutor, *Milton, McNulty & Augelli.*

For the defendant City of Jersey City, *Charles A. Rooney* (*John J. Meehan,* of counsel).

For the defendant State of New Jersey, Division of Tax Appeals, Department of Taxation and Finance, *Walter D. Van Riper,* Attorney-General.

The opinion of the court was delivered by

EASTWOOD, J. *Certiorari* has been allowed to review the judgment of the New Jersey Division of Tax Appeals, Department of Taxation and Finance, made on November 12th, 1946, reversing the action of the Hudson County Board of Taxation setting aside and cancelling an assessment against prosecutor in the sum of $175,000, for the year 1943, upon fuel oil and kerosene owned by prosecutor and located in tanks

owned by Tankport Terminals, Inc., situate within the taxing district of Jersey City. By its judgment the State Division of Tax Appeals reinstated the validity of the assessment, but reduced it to the sum of $85,504.24.

Prosecutor is engaged in the business of buying and selling fuel oil and kerosene, having as its principal suppliers the Standard Oil Company of New Jersey and the Shell Oil Company. The source of supply is referred to in the testimony as the "gulf." The *modus operandi* of Maritime Petroleum Corporation is as follows: During the months of June, July and August of any year the prosecutor enters into contracts with its customers for the furnishing of fuel products. The contracts are actually entered into at a time when the prosecutor has as yet not received title to any oil from its suppliers. The amount of fuel contracted to be sold by the prosecutor is the factor governing the quantity purchased by it. The fuel is then shipped by tanker from the "gulf" to the storage point at Tankport, where it is pumped into tanks leased by the prosecutor and title to the fuel is then transferred to Maritime Petroleum Corporation. Prosecutor does not own the tankers in which the fuel is shipped, nor does it maintain any of its employees at Tankport Terminals, Inc., where the fuel is stored. The fuel is not processed in any way while it remains at Tankport Terminals, Inc., and it remains there for an indeterminate period, where it is mingled with fuel owned by other companies, and where it awaits shipment to the ultimate destination of the customers of prosecutor. Dependent upon the will of prosecutor's customers, the fuel is obtained at the storage site and transported by them either by truck or barge. Whatever the mode of transportation, the product in both cases is taken in facilities and equipment either owned or hired by customers of the prosecutor.

Prosecutor contends that the personal property in question is exempt from taxation under the provisions of *R. S.* 54:4–3.20, exempting personal property merely stored in a warehouse which is engaged in the business of storing goods for hire. It is said that the assessment complained of should be set aside on the further grounds that the fuel oil had no *situs* in the municipality for the purpose of taxation; that

prosecutor's property was in the course of interstate commerce and, therefore, not subject to taxation by the municipality. It is claimed by the defendants that the fuel oil was not stored in a warehouse for hire, but was actually held at Tankport Terminals, Inc., for the convenience of buyers either within or without the state; that the oil had come to rest within the state and was no longer in the course of interstate commerce and constituted a part of the general mass of property within the state subject to local taxing power; and further, that prosecutor is not entitled to exemption in that it failed to file a sworn claim for exemption pursuant to the requirements of *R. S.* 54:4–15 (since repealed, *Pamph. L.* 1945, *ch.* 163).

We have reviewed the testimony adduced before the Division of Tax Appeals and have considered the briefs of counsel in support of their contentions. Reduced to its essentials, the matter before us is clearly a factual one. If the fuel oil in question is found to have been stored in a *bona fide* warehouse in accordance with the provisions of *R. S.* 54:4–3.20, or if the fuel oil was only temporarily present in the storage tanks of Tankport Terminals, Inc., while in the course of interstate commerce, then prosecutor's claim for exemption must be granted. If, on the other hand, the oil, after having been pumped into the tanks of Tankport Terminals, Inc., came to rest within the state and was merely held there for the convenience of buyers either within or without the state, then there was no *bona fide* storage of the same within the intendment of *R. S.* 54:4–3.20; likewise, the continuity of the carriage in interstate commerce was broken, and the oil became a part of the general mass of property within the state subject to local taxation. We are of the opinion that the second proposition is the one sustained by the facts.

When it is considered that title to the fuel oil became vested in Maritime Petroleum Corporation at the time it was stored in the tanks of Tankport Terminals, Inc.; that the fuel remains there in storage for an indefinite period subject to the owner's disposal and thereby becomes intermingled with other fuel owned by other companies; that it remains there awaiting shipment to the ultimate destination of cus-

tomers of the prosecutor; it seems to us, and we so hold, that prosecutor's fuel oil was no longer in the course of interstate commerce and thereby required a *situs* within the state, subject to the state's dominion and liable to taxation as such. Our review of the cases, both state and federal, leads us inescapably to the conclusion that the matter before us is governed by the holding of the Court of Errors and Appeals in *Independent Warehouses, Inc.,* v. *Scheele,* 134 *N. J. L.* 133; 45 *Atl. Rep.* (2d) 703, opinion by Mr. Justice Heher. The court therein said:

"\* \* \* But if property be stored 'for an indefinite time during such transit, at least for other than natural causes or lack of facilities for immediate transportation, it may be lawfully assessed by the local authorities.' \* \* \* If there was a cessation of interstate commerce, the goods became subject to the jurisdiction of the state of their *situs.* Actual transit is the determinant. Here, movement in interstate commerce had ceased when the storage for an indefinite period began; and the coal then came within the dominion and protection of the state. As in the case of *Susquehanna Coal Co.* v. *South Amboy,* 76 *N. J. L.* 412; *affirmed,* 77 *Id.* 796, there was something more than an incidental interruption of the continuity of the transportation through the state. \* \* \*"

Our attention has been called to the cases of *Crown Can Co.* v. *Division of Tax Appeals et al.,* 135 *N. J. L.* 517; 52 *Atl. Rep.* (2d) 838, and *Dearborn Chemical Co.* v. *Division of Tax Appeals,* 135 *N. J. L.* 580; 53 *Atl. Rep.* (2d) 639, in both of which it was held that personal property was exempt because it was stored in a public warehouse. A careful reading of the cited cases will reveal that the factual situation in each was in nowise comparable to that prevailing in the case at bar. In both the *Crown Can Co.* case and the *Dearborn Chemical Co.* case the personal property so stored in warehouses represented property already sold to buyers and the device of storing the same in warehouses was used solely for the purpose of effecting delivery by the seller to the buyer in a practical manner. Here, the proofs are otherwise. Although it is claimed that the fuel oil stored in the tanks of Tankport Terminals, Inc., represented orders received by

prosecutor from its customers, yet there is abundant evidence that the entire mass of oil was not segregated for the accounts of such customers, but actually remained, to a large extent, in the storage tanks, subject to delivery to customers upon prosecutor's direction. The fuel oil remained in the storage tanks for an indefinite period of time. It is said this delay was due to the fact that transportation facilities to customers were not always available. This testimony is not in our opinion convincing.

Defendants have urged that the writ should be discharged for the reason that prosecutor has failed to make a timely claim for exemption as required by R. S. 54:4–15 (since repealed). Our disposition of the matter on the merits obviates any necessity of our consideration of this point.

The judgment of the Division of Tax Appeals affirmed the action of the City of Jersey City, but reduced the assessment from $175,000 on personalty, levied for the year 1943, to the sum of $85,504.24. No appeal was taken by the City of Jersey City from the reduced assessment.

The writ is discharged, with costs.